UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22977-CIV-LENARD/WHITE

**RAUL CARRILLO**,

    Petitioner,

v.

**WALTER A. MCNEIL**, Secretary,
Florida Department of Corrections**,**

    Respondent.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION (D.E. 11) AND DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (D.E. 1)

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Patrick A. White ("Report," D.E. 11), issued on September 9, 2009, recommending denial of Petitioner Raul Carrillo's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition," D.E. 1). Petitioner filed objections to the Report ("Objections," D.E. 16) on October 19, 2009. Having reviewed the Report, Objections, Petition, related pleadings, and the record, the Court finds as follows.

    **I.**    **Background**

On August 2, 2000, a grand jury in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, indicted Petitioner for first-degree murder with a firearm and aggravated stalking with a firearm. Petitioner was charged with the murder of his girlfriend after she ended their relationship. The case proceeded to trial and jury selection

began in late March 2005.

    **A.**    *Voir Dire*

During *voir dire*, prospective jurors were asked whether "yourself, a close friend or family member have ever been a victim of a crime." (D.E. 9, App. A at 192.) In response to this question, the following exchange occurred with one of the prospective jurors, Paul Soule ("Soule"):

| | |
|---|---|
| Court: | ...Jury [sic] No. 3, Mr. Soule. You listed two incidents, auto theft and armed robbery. How long ago? |
| Mr. Soule: | Auto theft last few years -- couple of times in the last few years. Close friend on armed robbery. |
| Court: | How long ago was that? |
| Mr. Soule: | Probably 10 years. |
| Court: | Both in Miami-Dade County? |
| Mr. Soule: | Yes. |
| Court: | Anything about any of those incidents that affect [sic] your ability to be fair and impartial in this case? |
| Mr. Soule: | I can't answer it that way. |
| Court: | You must answer it that way. |
| Mr. Soule: | I'm sorry. |
| Court: | I don't mean to put you on the spot but this is the only opportunity we get to explore some of your life experiences with you and an answer like "I don't know," while it may be very honest and an appropriate answer because it probably is the first time you've been asked this question, you haven't had a chance to reflect on it, an answer like "I don't know, I don't think so" may not be conclusive enough for us. If you select a jury to sit through two weeks of evidence and testimony and go back to the jury room and turn to one of our jurors, I told the Judge and attorney a week and a half ago that while I have life experiences, I didn't think that it will affect my ability to be fair and impartial. Now that I have heard all the evidence and testimony, at that point into later [sic] who are they. While I don't mean to [sic] on the spot. I don't mean to put you on the spot, as well the other group who are thinking about this that to see if we can get |

|              |                                                                                                                                                                                                          |
|--------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | more definitive may have been choice words and your part as to whether or [illegible] experiences affect your ability to be [illegible] impartial in this case? |
| Mr. Soule:   | We had a long discussion [illegible] I'm sure life experiences has an effect.                                                                                                                            |
| Court:       | Absolutely. There isn't a question that you can question what a witness says, and can you set that aside.                                                                                                |
| Mr. Soule:   | I honestly do not believe that those life experiences would affect my ability in this case.                                                                                                              |
| Court:       | Okay, thank you.                                                                                                                                                                                         |
| Mr. Soule:   | But I don't think so. I do have a question, your Honor.                                                                                                                                                  |
| Court:       | Okay.                                                                                                                                                                                                    |
| Mr. Soule:   | You mention [sic] that this is a murder trial and that the death penalty is not on the table. Why is that, sir?                                                                                          |
| Court:       | Because it is.                                                                                                                                                                                           |
| Mr. Soule:   | We'll never know.                                                                                                                                                                                        |
| Court:       | No, you'll never know.                                                                                                                                                                                   |
| Mr. Soule:   | I don't mind if you answer the question.                                                                                                                                                                 |
| Court:       | The state of Florida does not seek the death penalty in this case. It's as simple as that.                                                                                                               |

(Id. at 193-96.) Later on during *voir dire*, defense counsel read an instruction to the prospective jurors regarding their responsibility to weigh the reliability of evidence. (Id. at 721-23.) Defense counsel then proceeded to ask the jurors individually whether, "if it was shown that a witness had been convicted of a felony, would you consider that in assessing whether you believe him?" and "[w]hat if he had been convicted of [sic] more than one time?" (Id. at 723.) When presented with this question, Soule responded, "[y]ou have to weigh that in your consideration. Just as it said in the instructions you read, you have to weigh that into [your] consideration." (Id. at 724.)

    **B.**    **Jury Selection**

        **1.**    **Challenges for Cause**

At the conclusion of *voir dire*, sixteen prospective jurors, out of a panel of fifty, were excused for cause. (See D.E. 9, Ex. A at 156-57.) The trial court initially *sua sponte* removed seven jurors for cause. (See D.E. 9, Ex. T at 736-38.) The State then challenged thirteen jurors for cause, four females and nine males. (Id. at 738-46.) The trial court denied the State's challenges as to four of the male jurors (Nos. 22, 32, 33, 40), but permitted the others to be removed. As a result, the State successfully challenged four female jurors (Nos. 7, 9, 17, 19) and five male jurors (Nos. 1, 20, 25, 26, 28) for cause.

### 2. Peremptory Challenges

The defense exercised nine peremptory challenges to exclude six female jurors (Nos. 10, 11, 14, 29, 38, 41).[1] Petitioner also unsuccessfully attempted to exercise peremptory strikes against two additional female jurors, Danielle Linton (No. 24) and Consuela Germain (No. 36).[2] In turn, the State exercised nine peremptory challenges to exclude eight male jurors (Nos. 3, 4, 5, 12, 22, 23, 33, 40) and one female juror (No. 42).[3] Of the State's peremptory challenges, Petitioner unsuccessfully objected to four as based on race or gender.

The State exercised one of its peremptory challenges to "backstrike" Juror No. 3, Paul Soule, and the following exchange took place:

---

[1] Three of Petitioner's peremptory challenges were used on jurors Petitioner had unsuccessfully sought to remove for cause.

[2] The State had initially objected to Petitioner's use of a peremptory challenge as to Juror No. 14, Nerva Gonzalez, but subsequently withdrew that objection. (Id. at 752-54.)

[3] In addition, three of the State's peremptory challenges were used on jurors the State had unsuccessfully sought to remove for cause.

4

| | |
|---|---|
| State: | Strike No. 3. |
| Court: | Number 3? |
| State: | Yes. |
| Defense: | I didn't hear her, I'm sorry. |
| Court: | Three. |
| Defense: | Juror 3. Your honor, I object. He's a man. She wants to get more women on the jury. And he's been sitting there since we began and there is absolutely no answer he gave that would even hint to be anything other than an excellent juror. He was mature and very experienced. |
| Court: | Yeah. But he's not part of any suspect class for which to raise any Neil/Slappy/Melbourne inquiry. |
| State: | Judge, just for the record, he actually affirmatively asked why the death penalty is not on the table, He [sic] muttered under his breath in response thereto, which I noted. He also -- |
| Defense: | What was his -- I didn't hear his response. |
| Court: | Nobody here did. |
| State: | And about the convicted felon testifying. |
| Defense: | I'm sorry, what was that last thing? |
| State: | The court even asked him just for the record. |
| Defense: | What was that about? What was the last one? She's not speaking up. |
| Court: | That he muttered under his breath on the response to the death penalty being put on the table. There wasn't any from him. |
| State: | He actually raised it in front of the question of -- |
| Defense: | What's wrong with that? That's a very legitimate question. |
| State: | It's not a legitimate question for someone on this jury, Judge. |
| Court: | That's the State's eighth. |

(Id. at 764-66.) Thus, the State successfully used its eighth peremptory strike to remove Soule from the jury. Ultimately, the jury that was sworn in was composed of five males and seven females, with one male alternate and one female alternate.

### C. Conviction

After approximately one week of trial, the jury convicted Petitioner on both counts. Petitioner received a sentence of life imprisonment, with a mandatory-minium sentence of

fifty years, for the murder, and five years imprisonment for the aggravated stalking charge, to run concurrent. (See Report at 4; D.E. 9, App. A at 228-231.)[4] Petitioner appealed his conviction on the grounds that the trial court erred in striking Soule over defense objection and without making a finding that the reasons offered by the State were non-pretextual.

### D.   Appeal

On August 8, 2007, the Third District Court of Appeals affirmed Petitioner's conviction. A majority of the panel found that:

> On appeal, the Defendant argues that the trial court's statement that men are not a protected class constitutes prima facie proof that the court never engaged in a genuineness analysis. We cannot agree. Despite the trial court's off-the-cuff remark, the State offered a gender-neutral reason for the strike, and the trial court engaged in a discussion with counsel regarding the genuineness of the strike. Specifically, the State expressed its concerns with the juror's question about the reason the State did not seek the death penalty, and the juror's comment in response to a *voir dire* inquiry that a convicted felon is not a very reliable witness. While the trial court in the instant case was incorrect that men are not a suspect class, the State's proffer of a gender-neutral reason for the strike and the ensuing discussion with the Court, affirmatively indicate that the trial court implicitly underwent a genuineness inquiry and found the State's proffered reason to be non-pretextual.

Carrillo v. State, 962 So.2d at 1016. The appellate court further found that "[t]he record demonstrates that the State sought to strike both women and men from the panel and that no other juror asked why the Defendant was not facing the death penalty." Id. at 1017. The dissenting opinion found the record did not support a "finding-by-implication." Id. at 1017 (J. Ramirez, dissenting). Rather, the dissent noted that prior to striking Soule, the State

---

[4]   For a discussion of the evidence presented at trial see the state appellate court's decision at Carrillo v. State, 962 So.2d 1013, 1014 (Fla. 3d DCA 2007).

6

moved to strike eight male jurors and on three occasions challenged Petitioner's use of peremptory strikes against female jurors. Id. at 1017-18. Additionally, the dissent noted that "the trial judge here seemed to be very cognizant of its requirements by repeatedly making genuineness and pretextual findings when ruling on the objections as to jurors Escarilla and Reyes (the defense objections) and jurors Gonzalez, Germain, and Linton (the State's objections)." Id. at 1019. The dissent found that "the trial court's comments about not hearing the juror's response, or muttering under his breath, does not remotely imply that the court (1) agreed with the reasons, (2) was receding from its position that Soule did not belong to a suspect class, or (3) found the reasons genuine and non-pretextual." Id. Furthermore, the dissent noted that Soule's concern regarding the death penalty appeared to make him more favorable to the State and there was no evidence in any event that the trial court considered the make-up of the venire, prior strikes used against males, strikes based on reasons equally applicable to other jurors, or the singling out of a juror for special treatment. Id. at 1020. In conclusion, the dissent opined that, "it is clear that the State was systematically striking males from the venire." Id. On November 26, 2007, the Florida Supreme Court declined to accept jurisdiction and denied Petitioner's petition for review. Carrillo v. State, 973 So.2d 1119 (Fla. 2007).

### E. Petition

Petitioner then came to this Court, filing the instant *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (See D.E. 1.) Petitioner again argues the trial court

7

erred in striking Soule without making a finding that the reasons offered by the State were genuine.

## II.     The Report and Objections

The Report recommends denial of the Petition on the merits[5] and finds the state court's findings were not contrary to nor an unreasonable application of Batson v. Kentucky, 476 U.S. 79 (1986). The Report first acknowledges, "[t]he trial court erred when it stated males are not protected from discrimination during jury selection." (Report at 8 (citing J.E.B. v. Alabama, ex rel. T.B., 511 U.S. 127 (1994)).) Nonetheless, the Report finds "this statement did not end the matter" as the State proffered gender-neutral reasons and "[d]efense counsel did not explain why these reasons were pretextual or compare the juror at issue to a similar female juror who the State did not strike." (Id.) The Magistrate Judge found that the record supported the state court's finding in that the "juror at issue tenaciously questioned the trial court about the death penalty, and commented on a convicted felon's credibility." (Id. at 8-9.) Because defense counsel failed to refute the State's proffered reasons, the Magistrate Judge determined "[t]he State appellate court's finding the trial court implicitly found the reason to be genuine is based on a reasonable determination of the facts and is not contrary to or an unreasonable application of Batson." (Id. at 9 (citing Atwater v. Crosby, 451 F.3d 799, 807 (11th Cir. 2006); Valle v. Sec'y, Dep't of Corr., 459 F.3d 1206 (11th Cir. 2006); McNair v. Campbell, 416 F.3d 1291, 1311 (11th Cir. 2005); United States

---

[5]     The Report notes, and Respondent concedes, that the Petition is timely and properly exhausted. (Report at 6.)

v. Alston, 895 F.2d 1374 (11th Cir. 1990)).) Petitioner's Objections to the Report mimic the appellate court's dissenting opinion.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), greatly limits the ability of federal courts to review state court convictions. Pursuant to 28 U.S.C. § 2254(d), a federal court may not grant an application for a writ of habeas corpus on behalf of a person held in custody pursuant to a claim adjudicated on the merits in a state court unless the state court's adjudication of the claim, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Regarding the first prong, "[a] state court decision is 'contrary to' clearly established federal law where the state court either applied a rule in contradiction to governing Supreme Court case law or arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts." Hannon v. Dep't. of Corr., 562 F.3d 1146, 1150 (11th Cir. 2009) (citing Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006)). A federal court may also grant relief "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). Nevertheless, "[a] federal

9

habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," rather "that application must also be unreasonable."[6] Id. at 411. A federal habeas court's inquiry "should ask whether the state court's application of clearly established law was objectively unreasonable." Id. at 410. In addition, findings of fact made by the state court are presumed correct and may only be rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11th Cir. 2007).

**IV.    Discussion**

The evaluation of a prosecutor's gender-neutral explanation under Batson is a "pure issue of fact . . . peculiarly within the trial judge's province." McGahee v. Alabama Dep't of Corr., 560 F.3d 1252, 1255 (11th Cir. 2009) (citing McNair, 416 F.3d at 1310). "Therefore, a Batson claim at habeas is often analyzed under AEDPA § 2254(d)(2), and is only granted 'if it was unreasonable to credit the prosecutor's race-neutral explanations.'" Id. at 1256 (citing Rice v. Collins, 546 U.S. 333, 338 (2006)). However, "[w]here the concern is that a state court failed to follow Batson's three steps, the analysis should be under AEDPA § 2254(d)(1), which requires the federal court find that the state court rendered a decision that was 'contrary to, or involved an unreasonable application of, clearly established federal law.'" Id.

In J.E.B. v. Alabama, ex rel. T.B., 511 U.S. 127, 146 (1994), the United States

---

[6] One authority defines "unreasonable" as "[n]ot guided by reason; irrational or capricious." BLACK'S LAW DICTIONARY 1537 (7th ed. 1999).

Supreme Court established that, "the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender." Thus, the three-step analysis employed under Batson is applicable to peremptory challenges based on gender. See Trawick v. Allen, 520 F.3d 1264, 1266 (11th Cir. 2008). The Eleventh Circuit has explained:

> As with a claim of racial discrimination, a party making a J.E.B. challenge bears the burden of proving a prima facie case of gender discrimination by showing "'that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" Johnson v. California, 545 U.S. 162, 168, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005) (quoting Batson, 476 U.S. at 93-94); see also J.E.B., 511 U.S. at 144-45. Once a party establishes a prima facie case of gender discrimination, the burden shifts to the prosecutor to offer gender-neutral explanations which are not pretextual for the challenged strikes. J.E.B., 511 U.S. at 144-45. The third step in the Batson/J.E.B. framework then requires the trial judge to decide whether the opponent of the strike has proven purposeful discrimination. Johnson, 545 U.S. at 168.

Id. at 1266-67. In conducting the third step of the Batson analysis, courts must consider "all relevant circumstances." See McGahee, 560 F.3d at 1260-61. Nevertheless, nothing in Batson requires trial courts to explicitly state their findings as to each step. See id. at 1259 n.7 ("Although the trial judge did not explicitly find that the defendant had made out a prima facie case of discrimination . . . 'where the trial court requires the prosecution to explain its peremptory challenges without first finding the existence of a prima facie showing of discrimination, we may fairly conclude that the inquiry implied such a finding, and shifted the burden of justification to the prosecutor.'"); Atwater, 451 F.3d at 807 (affording deference to state-court decision where the third step of the *Batson* analysis was "touched"). Ultimately, the burden of persuasion to demonstrate purposeful discrimination never shifts

11

from the opponent of the strike.  Purkett v. Elem, 514 U.S. 765, 768 (1995).

The Court finds that the state appellate court did not unreasonably apply Batson in affirming Petitioner's conviction.  Rather, the Third District Court of Appeals correctly applied the Batson/J.E.B. framework in evaluating the implicit findings of the trial judge and the record.  First, nothing in Batson requires trial courts to explicitly recite any magic words or incantations.  In McGahee, the Eleventh Circuit noted that the trial court's finding of a *prima facie* case under Batson was implicit in the court's inquiry of the prosecutor. 560 F.3d at 1259 n.7.  In Atwater, the Eleventh Circuit similarly determined that the state appellate court did not unreasonably apply Batson where the trial judge engaged in "some evaluation" of the prosecutor's reasons and "the third step of the Batson analysis was touched," despite the trial judge failing to make an explicit finding as to whether purposeful discrimination was shown.  451 F.3d at 807.  In this case, the Third District Court of Appeals, stressing the need to avoid elevating form over substance, determined that based upon the State's proffered reasons (Soule's questions about the death penalty and demeanor, as well as his response regarding the credibility of witnesses with felony convictions) and the "ensuing discussion with the Court," the trial court implicitly performed Batson's third step.  Carrillo, 962 So.2d at 1016.  The record also supports this finding in that the trial court discussed the matter ("That he muttered under his breath on the response to the death penalty being put on the table. There wasn't any from him") and explicitly granted the State's peremptory challenge ("That's the State's eighth").  Given the great deference afforded state court determinations

12

under § 2254, the Court cannot conclude that the state court's assessment that the trial court made implicit <u>Batson</u> findings was objectively unreasonable.

Second, the appellate court properly considered all of the relevant circumstances in evaluating Petitioner's <u>Batson</u>'s challenge.[7]  Specifically, the appellate court found that, "[t]he record demonstrates that the State sought to strike both women and men from the panel and that no other juror asked why the Defendant was not facing the death penalty." <u>Carrillo</u>, 962 So.2d at 1017.  Soule's persistent questioning of the trial judge as to why the case did not involve the death penalty was a gender-neutral reason that did not equally apply to any unchallenged juror.  Under <u>Batson</u>, the prosecutor's proffered reason "need not rise to the level justifying exercise of a challenge for cause," and there was no evidence presented to indicate that this reason was pretextual.  476 U.S. at 97.  In response to the State's proffered reasons, Petitioner's counsel's principal contention was that the juror's questioning of the judge was "legitimate."  Additionally, the appellate court considered the fact that the State used peremptory strikes against both groups.  <u>Id.</u> at 1017.  Ultimately, Petitioner shouldered the burden of demonstrating purposeful discrimination and the appellate court concluded that based on the record this burden was not met.  Thus, the state appellate court's application of <u>Batson</u> to the facts of this case was not objectively unreasonable.

**V.    Conclusion**

The state appellate court correctly identified the applicable federal law and did not act

---

[7]    Even assuming the trial court failed to conduct the third step under <u>Batson</u>, the appellate court's application of <u>Batson</u> was not unreasonable.

unreasonably in determining that the trial judge implicitly performed the third step under Batson. Additionally, the state appellate court's determination that Batson was not violated based upon the State's proffered reasons which were unique to this juror and the State's pattern of strikes, was not unreasonable. Accordingly, the Court finds the state court did not unreasonably apply federal law and it is hereby **ORDERED AND ADJUDGED** that:

   **1.**   Consistent with the analysis and supplemental findings made in this Order, the Report and Recommendation of Magistrate Judge Patrick A. White (D.E. 11) is **ADOPTED**;

   **2.**   The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (D.E. 1) is **DENIED**;

   **3.**   This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 23rd day of July, 2010.

*Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**